[ PHILADELPHIA, APRIL 4TH, 1840. ]

STECKER *against* SHIMER.

IN ERROR.

A. one of the children of an intestate took the real estate at a valuation, and entered into a recognizance in the Orphans' Court with condition to pay to the widow and other heirs of the deceased, their several shares and purparts of the valuation. A. afterwards conveyed the land to B., subject to the payment unto the other children of the intestate of their respective shares, and the widow's yearly interest during her lifetime. B. conveyed the land to the defendant subject to the payment of their shares to the children of the intestate, and of the interest to the widow, &c. A. assigned to C. all his interest in that part of the valuation money the interest of which was payable to the widow; after which the widow died. In an action by A. to the use of C. to recover from the defendant this part of the valuation money, it was *held*, (1st.) That A. was not a competent witness to support the claim. (2d.) That by the acceptance of the land at the valuation, A.'s share of the valuation was extinguished; and that parol evidence of an agreement between A. and B. that the amount of the claim should remain a lien on the land, was not admissible: there being no allegation of any mistake by the scrivener in drawing the deed.

ON the return of a writ of error to the Court of Common Pleas of Northampton county, it appeared that John Stecker brought an action on the case in that Court to the use of Robert Levers, Joseph

Levers and Lewis Micke, administrators, &c. of George Levers, deceased, against Edward Shimer.

The circumstances of the case were as follows:

Matthias Stecker died intestate, seized of real estate, leaving a widow and five children. His real estate was appraised and divided into two purparts. No. 1, was valued at six thousand one hundred and thirty-six dollars, subject to its proportion of the costs, viz. twenty-eight dollars and fifty-three cents, leaving the sum of six thousand and seventeen dollars forty-seven cents to be paid to the widow and children. This purpart was accepted by John Stecker one of the sons of Matthias Stecker, on the 24th of November, 1820. Two thousand and thirty-five dollars eighty-two cents, the one-third of the valuation money, was to remain charged upon the said purpart until the death of the widow, of which she was to receive the interest during her life; and at her death the said sum was to be distributed to and among the heirs of Matthias Stecker. John Stecker gave a bond to each of his brothers and sisters, for their proportion of the valuation money presently due, and also for their several proportions of the said two thousand and thirty-five dollars eighty-two cents, so charged on the said purpart, and payable on the death of the widow. He likewise gave a bond to the widow securing the payment to her of the interest on the one-third of the appraised value, annually during her life; and also entered into a recognizance in the Orphans' Court, binding himself to pay unto the widow her annual interest, and to the other children their several shares and purparts of the valuation money.

Purpart No. 2 of the estate was valued at two thousand one hundred and eighty-seven dollars, subject to its proportion of the costs, viz. twenty-eight dollars fifty-three cents; thus leaving for distribution two thousand one hundred and fifty-eight dollars forty-seven cents. Of this sum one thousand four hundred and thirty-eight dollars ninety-eight cents were presently due for distribution; and seven hundred and nineteen dollars forty-nine cents were to remain charged on the purpart until the widow's death. John Geiger, married to one of the daughters of Matthias Stecker, accepted purpart No. 2, and likewise gave a bond and entered into a recognizance securing to the widow her annual interest, and to the other heirs their several shares of the sum thus charged. The widow of Matthias Stecker died on the 12th of September, 1835.

On the 2d of April, 1821, John Stecker conveyed the land described as purpart No. 1, to Jacob Shimer, who on the 26th of November, 1823, conveyed the same to Edward Shimer the defendant.

This action was brought to recover the one-fifth of two thousand and thirty-five dollars eighty-two cents, viz. four hundred and seven

dollars sixteen cents; and also the one-fifth of seven hundred and nineteen dollars forty-nine cents, viz. one hundred and forty-three dollars eighty-nine cents, with interest on each sum from the 12th of September, 1835.

The defendant pleaded *non assumpsit, actio non accrevit infra sex annos* and a tender; and the cause came on for trial before BANKS, (President,) on the 1st of December, 1837, when the plaintiff gave in evidence the deed to Jacob Shimer, and the deed from Jacob Shimer to Edward Shimer; and then offered John Stecker as a witness to prove the contents of an agreement, alleged to have been lost, between him and Jacob Shimer in respect to a certain reservation in the deed from Jacob Shimer to the defendant, which is as follows: "under and subject to the payment unto the other children and representatives of Matthias Stecker deceased, their equal and proportional parts of and in the valuation aforesaid, and the widow's yearly interest during her lifetime:" for the purpose of showing, 1st, The terms under which Shimer purchased; and 2nd, To show a mistake in the scrivener in drawing the deed from him to Jacob Shimer.

To the admission of which evidence the defendant's counsel objected. 1st. Because he was interested. 2nd. Because he was called to contradict the deed and support the claim which he sold. And the Court sustained the objection; to which the counsel for the plaintiffs excepted.

A great deal of evidence was given on the subject of the alleged agreement of Jacob Shimer to pay the proportion of John Stecker of this valuation money. The substance of this testimony appears in the charge of the learned judge; who after stating the facts above mentioned, proceeded as follows.

"On the acceptance by John Stecker of purpart No. 1, his one fifth of its appraised value was paid. This applies to his share, as well of the sum which was charged on the land until the death of the widow, as of that which was to be paid presently. He owned the land. He was not debtor to himself, nor was the land debtor to him, who was its owner. He had given an obligation to pay the interest to the widow during her life, and also their shares to his brothers and sisters. To secure these payments, the money was a charge upon the land. But there was by the Orphans' Court proceedings, no charge or lien on the land in his favour for his own share. This was, by the operation of law paid. The lien as to this part was extinguished. He could not be owner of the land and debtor to himself. How could such a claim be enforced? The party plaintiff would be John Stecker. The party defendant would be the same John Stecker, and the land, out of which the

(Stecker v. Shimer.)

money was to be made, would be the property of the same John Stecker. This would be absurd, and therefore, the share he would have been entitled to was paid, the instant he accepted. The article for the sale of the land by John Stecker to Jacob Shimer cannot be found. What has been done with it, has not been shown. Whether it was destroyed by the parties, or by the person with whom it had been left when the deed was delivered, we do not know. I will call your attention presently, more particularly to the proof, which has been adduced in regard to the article and its contents. The deed from John Stecker to Jacob Shimer, recites minutely the proceedings in the Orphans' Court and John's acceptance. It states clearly that Shimer should take and hold the land subject to the payment of their parts to the other children and the widow. By this deed John granted all said tract of land, and all his estate, right, title, interest, property, claim whatsoever in law, equity or otherwise, in or to it. He also gave a warranty against all persons whomsoever lawfully claiming the same. This deed on its face vested the fee in the land in Shimer, discharged from any lien which John might have had on it. If there was no other evidence in the cause than this deed, it would be conclusive against the present disputed claim. The terms of the deed are clear and explicit. The claims to which the grantee was to hold subject, are positively, definitely and distinctly stated. This would determine and conclude the rights of the parties, if it was as I have stated, the only evidence. It is then necessary to view all the evidence in the cause, and from this our conclusion must be formed. Where a contract for the sale of land is originated by articles of agreement, to be perfected by deed, the deed when executed and delivered, is the consummation of the contract. The deed being the ultimate act of the parties, in ordinary cases, controls all prior covenants. Still it may be otherwise in point of fact, and for the best and most beneficial purposes. Here other things were to be done by the vendee, such as to pay the interest of the sum charged upon the land, annually, to the widow, during her life, and the principal to the other heirs after her death. To secure the performance of these stipulated duties, the article might have been preserved by the parties, to perform these functions, after the execution of the deed. So it might be as to any other covenant contained in the article, to be performed subsequently to the execution of the deed. The parties might have agreed to say that John's portion of the sum charged, was to be paid to him after the widow's death, and that the article was to exist to enforce the performance of this agreement after the deed was executed. Was it so agreed by the parties, and have you proof sufficient to satisfy you that this was their agreement? When the defendant bought, this deed of John Stecker's was on record. It was the title of his vendor, and in the absence of proof to the contrary, it would be presumed that he bought on the faith of

(Stecker *v.* Shimer.)

this title, as exhibited in the deed. The defendant's deed recites the proceedings in the Orphans' Court, the valuation and accept- ance of John, his deed to Jacob Shimer conveying the land, subject to the payment of their parts to the other children and the widow. Then it proceeds to provide, that the defendant should take and hold the land subject to the payment of their shares to the children and widow of the valuation aforesaid. This last clause is relied on as sufficient to charge the present litigated claim, on the lands in the hands of the defendant. If we had no evidence but the pro- ceedings in the Orphans' Court, John Stecker's deed to Jacob Shi- mer, and Jacob Shimer's deed to the defendant, the Court would charge you, that it was not sufficient for any such purpose; that the true construction would be, that the defendant took subject to the payment of their shares to those who appeared by the proceed- ings and recitals to be entitled to a share in the moneys thus charged on the lands. That the title papers and records, showing that this land was held subject to the payment of money to certain children, that it was their shares only that the defendant took and held sub- ject to. But as there is parol evidence on this point, we submit this deed to you with the parol evidence; and from all this evidence you will say, what the agreement of the parties was as to this money. The article of agreement is not to be found. Jacob Shi- mer, a party to it, says he never saw it since it was executed. He says he does not recollect of seeing it when the deed was executed. One of the subscribing witnesses to the deed says, he does not recollect that it was present, or that he saw it when he wit- nessed the deed. The most satisfactory evidence we have of its contents, is found in the testimony of *Col. Levers.* He states that he was a subscribing witness to it. He heard it read—that he did not read it—that Jacob Shimer was to pay what John had taken the purpart at, and a bonus of five hundred or five hundred and fifty dollars. That this dower was to be paid at the widow's death: that John's part of the dower was to be paid to John. That he did not recollect the manner in which the money was to be paid; that he did not know that there was any thing said in the article as to how John's part of the dower was to be secured. There is other evidence as to what was said by the defendant. You will consider it all, together with the defendant's deed, and say what was the agreement of the parties as to this money. This is left as a fact for your decision. Levers does not undertake to tell the contents of the article as to how, or when the money was to be paid; nor does he recollect the whole contents of the paper, nor how this money was secured or to be secured. When a paper is lost, this is the only proof that can in most cases be had. When there is no copy, the recollection of those who knew its contents, must from necessity, be resorted to. The paper is always the best evidence. It is certain, permanent and unchangeable. Parol evi-

(Stecker *v.* Shimer.)

dence is less certain. Men may misunderstand and may forget. Although it is not as certain and satisfactory as the article would be, still it is evidence, and you will give it all the weight you think it entitled to. If the article did charge this money upon the land, you must be satisfied that the defendant either knew it, or agreed that it should be so; for in either case the plaintiffs would be entitled to recover; but unless you believe that he either knew it or agreed that it should be so, your verdict should be for the defendant as to this part of the claim. As to his having knowledge of this, or his agreement to it, you will decide from all the evidence written and parol. You must be satisfied that this sum was charged upon the land by the agreement of the parties, or the plaintiff must fail. The Orphans' Court proceedings do not make it a lien. They show it was paid, and that it was not a lien. The deed of John Stecker to Jacob Shimer does not make it a lien. It passes the title to it entirely discharged from it. The deed passes the land on its face, free, clear and unincumbered from, or by reason of, any claim on the part of John. Was this sum made a charge upon the land by the articles of agreement? Did the defendant know that it was so charged, or did he agree that it should be so charged? If it was charged on the land by the article and the defendant knew it, or if he agreed that it should be so charged, the plaintiff could recover it, otherwise he could not. You will then take the defendant's deed, and all the parol proof on this point, and decide as you think right."

The plaintiff's counsel excepted to this charge; and a verdict having been given for the defendant, a writ of error was taken and the following errors assigned.

" 1. The Court erred in rejecting the evidence of John Stecker on the plaintiff's first proposition.

2. They likewise erred in overruling the same evidence when offered in connection with the reservation in defendant's deed.

3. Also in that part of their charge to the jury which relates to the non-production of the agreement, wherein they say, " whether it was destroyed by the parties or by the person with whom it had been left when the deed was delivered we do not know:" thus strongly intimating to the jury *that it was destroyed* by the one or the other, but of which there was no evidence whatever.

4. In charging the jury, " that the deed from John Stecker to Jacob Shimer states clearly that Shimer should take and hold the land subject to the payment of their parts to the other children and widow."

5. In charging the jury, " that the true construction of the proceedings in the Orphans' Court, John Stecker's deed to Jacob Shi-

mer, and of Jacob Shimer's deed to the defendant would be, that the defendant took subject to the payment of the shares of those children only, whose shares were . charged upon the land," to the exclusion of John Stecker.

6. In charging the jury, "if the article did charge this money upon the land, you must be satisfied that the defendant either knew it, or agreed that it should be so."

7. And in charging the jury, "that they must be satisfied that this sum was charged upon the land by the agreement of the parties, or the plaintiffs must fail. That the Orphans' Court proceedings do not make it a lien. They *show it was* paid, and that it was not a lien."

8. That the whole tenor of the charge was unwarranted by the evidence in the cause, and tended to mislead the jury in regard to the law and the facts in the case."

Mr. *Ihrie,* for the plaintiff in error, contended, that the testimony of John Stecker ought to have been admitted: upon which point he cited *Hayes* v. *Greer,* (4 *Binn.* 83.) *Fernsler* v. *Carlin,* (3 *Serg. & Rawle,* 132.) *Lewis* v. *Manley,* (2 *Yeates,* 200.) *Fetterman* v. *Plummer,* (9 *Serg.* & *Rawle,* 20.) *Davis* v. *Barr,* (9 *Serg. & Rawle,* 137.) *Cozens* v. *Stevenson,* (5 *Serg. & Rawle,* 421.) *Dinkle* v. *Marshall,* (5 *Binn.* 587.) *Christ* v. *Deffenback,* (1 *Serg. & Rawle,* 464.) *Brown* v. *Morehead,* (8 *Serg. & Rawle,* 569.) *Hultz* v. *Wright,* (16 *Serg. & Rawle,* 345.) *Flagler* v. *Pleiss,* (3 *Rawle,* 345.) *Gower* v. *Sterner,* (2 *Wharton's Rep.* 75.) *Neil* v. *Thompson,* (4 *Watts,* 405.) *Pidcock* v. *Bye,* (3 *Rawle,* 183.) *Crotzer* v. *Russell,* (9 *Serg. & Rawle,* 80.) *Seitsinger* v. *Weaver,* (1 *Rawle,* 377.) *Reed* v. *Dickey,* (2 *Watts,* 459.)—The exceptions to the charge were not pressed.

Mr. *Brodhead,* and Mr. *Hepburn,* for the defendant in error, cited 4 *Cruise's Digest,* 270. *Penrose* v. *Griffith,* (4 *Binn.* 235.) *Hopkins* v. *Conrad,* (2 *Rawle,* 316.) *Baxter* v. *Graham,* (5 *Watts,* 418.) *Packer* v. *Gonzalus,* (1 *Serg. & Rawle,* 526.) *Hamilton* v. *Neel,* (7 *Watts,* 520.) *Sweitzer* v. *Meese,* (6 *Binn.* 500.) *Long* v. *Long,* (1 *Watts,* 270.) *Price* v. *Junken,* (4 *Watts,* 87.) *Peebles* v. *Reading,* (8 *Serg. & Rawle,* 496.) *Willing* v. *Peters,* (12 *Serg. & Rawle,* 181.) *Reigle* v. *Seiger,* (2 *Penn. Rep.* 340.) *Edwards* v. *Hoopes,* (2 *Wharton's Rep.* 425.)

The opinion of the Court was delivered by

ROGERS, J.—The rule that a person cannot be a witness to invalidate an instrument to which he is a party, is confined to paper strictly negotiable, and which has been actually negotiated. Although then, there is nothing in that exception, yet the witness was properly excluded, on the objection of interest, for if the assignee fails to

(Stecker *v.* Shimer.)

recover from the defendant, because nothing was due at the time of the assignment, the witness is liable to refund the amount paid on the implied warranty. *Gest* v. *Espy*, (2 *Watts*, 265.) *Crotzer* v. *Russell*, (9 *Serg. & Rawle*, 80.) *Baxter* v. *Graham*, (5 *Watts*, 418.) And *Kelly, use of Eichman* v. *Midler*, decided at this term.* But the objection is equally strong to the subject-matter of the testimony. On the face of the proceedings in the Orphans' Court it is very clear, that John Stecker had no lien on his own land for any portion of the money payable after the death of the widow. As by the acceptance of the purpart and the decree of the Court, he became the absolute owner in fee simple of the premises, the lien so far as it affects his share of the valuation-money was extinguished. In other words he cannot occupy the position of both creditor and debtor. And this would seem to have been the understanding of the original parties to the contract; for in the first deed, Stecker to Jacob Shimer, the reservation is made subject to the payment to the other children and representatives of the deceased intestate; plainly excluding himself from any benefit to be derived from any portion of the valuation money which is made a lien on the premises. In the second deed, Jacob Shimer to Edward Shimer, the phraseology is somewhat varied by the omission of the word *other*, but this will not alter the construction. If the case depended on that deed, in connection with the previous proceedings in the Orphans' Court, it would not amount to a covenant to pay him the proportion of the widow's share, which had been extinguished by the confirmation and decree of the Court. It would be a covenant to pay the portion of those children only, whose shares were charged on the land, to the exclusion of the grantor in the deed. In plain opposition to the legal effect of the deeds, the plaintiff offers to prove the contents of the agreement, which is lost, between the witness and his vendee, in connection with the reservation in the deed to the defendant. From what has been already said, it results, that the testimony derives no aid from the last deed. It is also manifest, that proof of the contents of the agreement, can make the case no stronger than it would be on the production of the article itself. The defendant did not offer to prove specifically a mistake by the scrivener in drawing the deed; but the evidence is adduced, as is distinctly said, to prove the contents of the article; from which the inference is drawn, that because they differed in some of their essential terms, therefore the scrivener had mistaken the instructions of the parties. From the premises however, no such inference can be legally drawn: for although you may show a mistake by parol, in which case the Court would reform the deed, yet when it is executed and there have been articles of agreement between the parties, the articles are consummated and merged in the deed;

*Ante.* Page 446.

(Stecker *v.* Shimer.)

and the legal presumption is, that when they differ, the parties have entered into a new agreement. The mere fact that they do not agree will not authorize the interference of a Court of Chancery; but the Court will only reform the deed when other proof is given by the subscribing witness, by the scrivener, or in some other manner, that the discrepance has arisen from misapprehension or mistake.

The other exceptions to the charge, on an intimation from the Court, were properly abandoned. The defendant who is a *bona fide* purchaser, cannot be affected by articles of agreement unless he had notice of their contents; and there is nothing in this deed which can lead him to a knowledge of the existence of any secret lien on the premises. It was essential to a recovery, that the jury should be satisfied that the sum for which the suit is brought, was charged on the land; that the defendant knew it, and agreed that it should be so. The proceedings of the Orphans' Court do not make it a lien, but they distinctly show, that by operation of law, it was paid. An erroneous opinion of the facts, if any such there be, is not the subject of error, and can only be corrected on a motion for a new trial.

Judgment affirmed.