UPDEGROVE *v.* UPDEGROVE.

IN ERROR.

A son who had taken a part of his intestate father's real estate at the valuation in the Orphans' Court; who had given recognisance to the widow and co-heirs for their respective proportions; and who had sold the part so taken, reserving "his interest at the death of the widow," allowed to come in for a share of the third, charged on the estate during her lifetime.

ON a writ of error to the Court of Common Pleas of Dauphin county, it appeared that this was an amicable action on a case stated, in the nature of a special verdict, in which Richard Updegrove, the plaintiff in error, was plaintiff, and Ellis Updegrove, trustee of Thomas F. Updegrove, and William B. Updegrove, defendant.

The facts agreed upon and submitted for the opinion of the court below, subject to a writ of error by either party, were as follows:—

Jacob Updegrove, the father of the parties in this suit, died in March, 1833, intestate, leaving a widow and seven sons. On the 15th of January, 1834, Thomas F. Updegrove, the eldest son, presented his petition to the Orphans' Court of Dauphin county, praying for an inquest to make partition of the real estate of the said Jacob Updegrove, deceased, which was awarded, and under it, part of the real estate of said decedent, containing three acres and eight perches, was valued and appraised at and for the sum of $2000, which part, thus valued and appraised, was taken on the 6th May, 1834, by the said Thomas F. Updegrove, who on the same day entered into a recognisance in the Orphans' Court, conditioned for the payment of two-thirds of that sum to the heirs of the said Jacob Updegrove, deceased, the interest of one-third of that sum of $2000 to be paid to the widow of the said Jacob, during the term of her natural life, and the principal to the heirs of the said Jacob, at the decease of the widow, prout said proceedings in the Orphans' Court herein referred to, and made part of this special verdict. That afterwards, to wit, on the 26th day of August, 1835, the said Thomas F. Updegrove sold and conveyed the said tract of land in fee-simple to his mother, Martha Updegrove, and his brother, the said William B. Updegrove, for the consideration of $1900, prout said deed now made part of this special verdict. That afterwards, to wit, on the 28th day of April, 1842, the said William B. Updegrove sold and conveyed in fee-simple to the said Richard Updegrove, the undivided half of said tract of land, for the consideration of $300, prout said deed now made part of this special verdict. That after-

wards, to wit, on the 9th day of December, 1843, the said Martha Updegrove (then Martha Innis) died, having first made her last will and testament, by which she appointed Hiram H. Hetzel, Esq., her executor, which will was duly proved, &c., prout said will now made part of this special verdict. That afterwards, to wit, on the 29th day of June, 1844, the said Hiram H. Hetzel, executor as aforesaid, sold under an order of the Orphans' Court of Dauphin county, to the said Richard Updegrove, the undivided half of the said Martha in the said tract of land, at and for the sum of $380, which sale, so made, was afterwards confirmed by the said court, on the 23d day of November, A. D. 1844, and $350, part of the proceeds of that sale, paid into court, prout said proceedings in the Orphans' Court, now made part of this special verdict. It is further agreed, that the share falling due to each of the heirs of the said Jacob Updegrove, at the death of the said Martha, widow of said deceased, in the said tract of land, was $94 91. If in all the above stated facts, deeds, records, and decrees, the Court shall be of the opinion that the said plaintiff is entitled to recover Thomas F. Updegrove's share, then judgment to be entered in his favour for $99 80; or if entitled to recover William's share, then $199 60; or if the plaintiff be not entitled to recover, then that judgment be entered for Ellis Updegrove, trustee of Thomas F. Updegrove, for $99 80, and for William B. Updegrove for $99 80, or for either of them that the court may think entitled. To the payment of which judgment or judgments, the court shall order and appropriate $99 of the proceeds of sale, paid into the Orphans' Court on the 28th day of November, 1844, by Richard Updegrove, the purchaser of part of the real estate of the said Martha, sold to him under an order of the Orphans' Court of Dauphin county; and $100 60, the moneys deposited in the Harrisburg Savings Institution, to the credit of Robert F. Black, clerk of Orphans' Court of Dauphin county, being part of the purchase money to be paid to Richard Updegrove by Margaret Halback, for the whole of the aforesaid tract of land, retained to pay the lien of the aforesaid recognisance; which when paid is to be in full of the shares formerly belonging to Thomas F. Updegrove and William B. Updegrove, under said recognisance of Thomas F. Updegrove.

The proceedings in the Orphans' Court, and the deeds made part of the case stated and referred to therein, so far as the same are material, are as follow.

### Orphans' Court Docket.

" Thomas Updegrove, eldest son and one of the heirs of said intestate, appears in court and prays that he may be permitted to take that part

of the real estate of said deceased, at the valuation thereof made, situate in Susquehanna township, Dauphin county, bounded by the river Susquehanna, lands of the heirs of Michal Boyer, deceased, and other lands of the intestate, containing three acres and eight perches, marked in the diagram annexed to the inquisition with the letter A. No. 2, and valued at and appraised for the sum of two thousand dollars, and that the same may be adjudged and confirmed to him at the valuation so thereof made, according to law. Whereupon it is ordered and decreed by the court, that the said Thomas Updegrove, on paying, or securing to be paid unto the widow and other children, heirs and legal representatives of the said estate, within one year from this time, with interest, their several and respective shares of and in the valuation of the said lot or piece of ground, do hold and enjoy the same with the appurtenances, to him and his heirs and assigns for ever, as fully and freely as the said deceased had and held the same, at the time of his decease.

"Thomas F. Updegrove and Wm. Reed, each, bound unto the Commonwealth of Pennsylvania in the sum of four thousand dollars, to be levied of their respective goods and chattels, lands and tenements, upon condition that if the said Thomas F. Updegrove shall and do, within one year from this time with interest, pay or cause to be paid unto the widow and other children of Jacob Updegrove, deceased, their several and respective shares of and in the valuation of that part of the real estate of the said deceased, adjudged and confirmed to the said Thomas Updegrove, then these recognisances to be void, otherwise valid."

### Deed from Thomas F. Updegrove to William B. Updegrove and Martha Updegrove.

"This indenture, made the twenty-sixth day of August, in the year of our Lord one thousand eight hundred and thirty-five, between Thomas F. Updegrove, of the township of Susquehanna, of the one part, and William B. Updegrove and Martha Updegrove, (widow,) all of Dauphin county, of the other part, witnesseth, That the said Thomas F. Updegrove, for and in consideration of the sum of nineteen hundred dollars, lawful money of the United States, to him in hand paid by the said William B. Updegrove and Martha Updegrove, at and before the ensealing and delivery of these presents, the receipt and payment whereof he doth hereby acknowledge, and thereof acquit and for ever discharge the said William B. Updegrove and Martha Updegrove, their heirs, executors and administrators, by these presents hath, granted, bargained, sold, aliened, enfeoffed, released and confirmed,

and by these presents, doth grant, bargain, sell, alien, enfeoff, release, and confirm unto the said William B. Updegrove and Martha Updegrove, and to their heirs and assigns, all that certain house and lot of ground, situate in Susquehanna township, Dauphin county, bounded on the north by the heirs of Michael Boyer, deceased; on the south by lands of Ellis Updegrove, and by the river Susquehanna; containing three acres and eight perches, being the same tract of land which the said Thomas F. Updegrove took at the valuation and appraisement, of his father, Jacob Updegrove, deceased's estate, and marked in the diagram of said estate with the letter A, and numbered with the number 2, which said tract of land was adjudged and decreed, by the Orphans' Court of Dauphin county, to the said Thomas F. Updegrove, his heirs and assigns for ever, *reserving at the same time the interest of the said Thomas F. Updegrove, at the death of the widow of the said Jacob Updegrove.*

### Deed of William B. Updegrove to Richard Updegrove.

"This indenture, made the twenty-eighth day of April, Anno Domini one thousand eight hundred and forty-two, between William B. Updegrove, of Tioga county, state of New York, of the one part, and Richard Updegrove, of Susquehanna township, Dauphin county, and state of Pennsylvania, of the other part: witnesseth, That the said William B. Updegrove, for and in consideration of the sum of three hundred dollars, lawful money of the United States, to him in hand paid by the said Richard Updegrove, at and before the ensealing and delivery of these presents, the receipts and payments whereof he doth hereby acknowledge, and thereof acquit and for ever discharge the said Richard Updegrove, heirs, executors, and administrators, by these presents hath granted, bargained, sold, aliened, enfeoffed, released, and confirmed, and by these presents doth grant, bargain, sell, alien, enfeoff, release, and confirm unto the said Richard Updegrove, and to his heirs and assigns, all that certain undivided half of a certain lot of ground situate in Susquehanna township, Dauphin county, aforesaid, bounded on the north and east by Jacob Reel, south by James Martin, and west by the river Susquehanna, containing three acres and eight perches, being the same tract of land which Thomas F. Updegrove took at the valuation and appraisement of his father, Jacob Updegrove, deceased's estate, and marked in the diagram of said estate with the letter A, and numbered with the number 2. Which said tract of land was adjudged and decreed by the Orphans' Court of Dauphin county to the said Thomas F. Updegrove, and to his heirs and assigns for ever,

*reserving at the same time the interest of the said William B. Updegrove, at the death of the widow of the said Jacob Updegrove, deceased."*

Judgment was entered by the court below, for the defendant, under the following opinion delivered by Eldred, president.

" This case depends on the construction to be given to the deeds from Thomas F. Updegrove to Martha Updegrove and William B. Updegrove, dated 26th August, 1835, and from William B. Updegrove to Richard Updegrove, dated the 28th April, 1842, which are in evidence, and made a part of this case. In the deed first referred to, it is set forth that proceedings were had in the Orphans' Court, whereby his father's real estate was appraised, and the part now under consideration was accepted by Thomas F. Updegrove, he paying to his brothers and sisters their part of two-thirds of the appraisement within a time fixed, and one-third was charged on the property, the interest of which was to be paid to his mother during her life, and at her death to be distributed amongst the heirs of his father, Jacob Updegrove, deceased. This estate was settled, and the interest of each heir at the death of their mother, the widow of the deceased, was known, or could have been known, by an examination of the records in the Orphans' Court. These records are referred to in the deed from Thomas F. Updegrove to his mother, Martha, and his brother William B. Updegrove, by which deed he conveys in fee-simple the part of his father's real estate accepted by him, and introduces into his deed these words :—' *Reserving at the same time the interest of the said Thomas F. Updegrove, at the death of the widow of the said Jacob F. Updegrove.*' By this deed Thomas F. Updegrove conveys to his mother, the widow, and his brother, William B. Updegrove, the part of his father's estate accepted by him at an appraisement in the Orphans' Court, with the reservation above expressed.

" For the plaintiff, Richard Updegrove, it is earnestly contended that Thomas F. Updegrove had nothing in the property to reserve or except, and that the reservation goes for nothing; that they are mere useless words, without any meaning or effect. That the reservation as above expressed is not good, either as a reservation or exception, and many authorities have been collected to sustain that view of the case. A reservation is a clause in a deed, reserving some one thing to a party out of the thing granted, and not in esse before. 4 Kent's Commentaries, 467. When Thomas F. Updegrove accepted the land at the valuation, that part of the valuation money coming to himself, whether of the two-thirds to be directly distributed, or that which was to be distributed at the death of his mother, the widow of his deceased father, was paid by the operation of law : he having taken the land at

the appraisement, extinguished his own claim upon it. The land could not be debtor to himself, the owner of it. This is well settled by the decisions of our courts in the cases of Reigle *v.* Seiger, 2 Serg. & Rawle, 340, and Stecker *v.* Shimer, 5 Wharton, 452. And if he had conveyed the land by deed, such as the one above referred to, without any reservation, or if the land had been sold by the sheriff, on a judgment against him, the property would have passed without any lien or claim upon it by Thomas F. Updegrove, for a distributive share in that sum charged upon it for the use of his mother, during her life. Although Thomas F. Updegrove had no lien on this land, he having been paid his share, in contemplation of law, when he accepted it at appraisement; still no one can doubt but that he had a right, when he sold it, to charge it with the sum of money that would have been coming to him on the death of his mother, provided, he had not accepted it, or with any other sum as a part of the consideration of the grant. In his deed of conveyance, he could have stipulated that $99 80, (his portion of the third that was left charged on the land for the widow's use, to be distributed at her death,) or any other sum as part of the consideration, should be paid to him at the death of his mother, without interest, or at any other time, and charged the land conveyed with this condition. This deed is a contract between the parties, and must be construed like all other agreements, according to their intentions, where the subject matter is lawful; and frequently parol evidence is introduced to aid a court in ascertaining such intentions, not to alter the written agreement, for that would be to make a new contract, which no court has a right to do. The intention of the parties is what all interpretation must aim at. It is the consenting minds, the concurring thought and will of the parties at the time of the agreement, that courts are called in to aid and support; and no matter what words are used, if the intentions of the parties, when they made the contract, can be gathered from the words used. It is necessary, in giving a construction to written agreements, to take into consideration every thing expressed in the writing, in order to ascertain the intention of the parties to it. If it was understood in this case by the parties, that Thomas F. Updegrove was to convey, and his mother and his brother, William B. Updegrove, were to receive the property conveyed, without any charge upon it for the amount which, by the settlement of the estate, would be coming to Thomas F., after the death of his mother, out of the third charged on the land for his mother's use, during her life, she being one of the grantees, why did they introduce into the deed the words, *' reserving at the same time the interest of the said Thomas F. Updegrove at the death of the widow of Jacob Updegrove. ?'* Here Thomas F.

Updegrove does not sell the land subject to the claim of the *other* heirs, or subject to the claim of *the* heirs of his father, in the part set aside for the widow's use during her life, as was done in the case of Stecker *v.* Shimer; but he expressly reserves his own interest in that fund. Under the undisputed facts in the case, can it not be fairly understood from what is written, that this $99 80 was a part of the consideration money agreed upon between the parties, which was to be paid after the death of his mother, without interest? It is true that this amount was not a lien on the land, Thomas F., the grantor, having accepted it at appraisement; but may it not fairly be said, that the parties made it so by their agreement? Can any other reason be given for the insertion of these words in the deed? call it a reservation, or agreement, or exception. Badly as the intentions of the parties are expressed, it is difficult to find any other motives for inserting these words, now the subject of consideration. If they did not mean this, what did they mean? We must believe they meant something, or they would not have given these words a place in their contract or deed.

" The case of Stecker *v.* Shimer comes nearest to this case of any in our books. That case turned on the construction of the deed from Stecker to Shimer, wherein Stecker conveyed to Shimer the land, ' *subject to the payment to . the other heirs their equal portion of and in the valuation money aforesaid, and widow's yearly interest during her life.*' No one suggested that Stecker could not, by his agreement, or deed, have charged the land with that portion set apart for the widow's dower during her life, which would be coming to himself at her death, if he had provided for it in his deed; notwithstanding, by accepting the land, his claim was paid by operation of law, and no lien upon the land; and even parol evidence was admitted, to show that Stecker did reserve it, which evidence was submitted to the jury. In that case, so far as the deed discovered the contract, the court decided that he had not provided for his own interest in that fund; and Mr. Justice Rogers observes, that if the word ' other' had been left out of the deed, it would have made no difference; I presume, on the ground that Stecker, the grantor, having received his portion of the estate of his father, by accepting the land at appraisement, could no longer be regarded as an heir. In that case there was something to be provided for; something for the reservation to act upon. The land was conveyed subject to the interest of the other heirs in the fund set apart, and charged on the land for the widow, and to be distributed at the death of the widow. Not so in the present case. The other heirs, or their interest, is not noticed; it was the interest of the grantor alone that was noticed, and intended to be protected by this reservation.

" It is said the reservation in this deed is void, for uncertainty in not expressing sufficiently the intentions of the parties. I cannot agree to this: it is true, the intentions are badly expressed, but yet I think they can be gathered from the whole case. The deed refers to the proceedings in the Orphans' Court, where the precise sum was known or could be readily ascertained. The evident mistake, in the reference in the deed, to the book and page, does not alter the case.

" If I am right in this view of the subject, so far as it relates to Thomas F. Updegrove's reservation, it follows, that William B. Updegrove is entitled to receive his part in the fund, for he made the same reservation in his deed to Richard; in fact, he stands on stronger ground. What right had Richard to complain; does he have to pay more than he agreed to pay; may it not be considered as part of the consideration money which he agreed to pay on the death of his mother?

" Judgment is, therefore, entered for the trustees of Thomas F. Updegrove, for $99 80, and for William B. Updegrove for the same amount."

The following error was assigned in this court:

The court erred in entering judgment in favour of Thomas F. Updegrove for $99 80, and for $99 80 in favour of William B. Updegrove, and in not entering judgment in favour of Richard Updegrove for the sum of $199 60.

*J. A. Fisher,* for plaintiff in error.

He argued, that a feoffment passed the whole estate or title of the feoffor, and if he had distinct interests in the land, it extinguished them all. 2 Hilliard's Abr. 308, No. 20. When this mode of convevance is made use of, as a previous possession was necessary to give it validity to any intent, so where such possession was had, the land itself passed from the grantor, and with it all future contingent or possible interests therein which he possessed at the time, or any period thereafter acquired. 44 Law Lib. 456. It passeth the present estate of the feoffor; and not only so, but barreth and excludeth him of all present and future right, and possibility of right, to the thing which is so conveyed. 30 Law Lib. 353, 354, 364.

He contended, that the authorities cited, established clearly and conclusively, that the legal operation and effect of a feoffment or deed, conveying a fee-simple, passed to the feoffee or vendee every interest that the vendor had in the land, at the execution and delivery of the deed; and if he had any interest, rent, future use, or

right of action, in, to, or out of the land, it was extinguished, and passed to the feoffee.

Let us apply these principles to the case now before this court. Thomas F. Updegrove took land under the proceedings in the Orphans' Court, in fee, subject, however, to the payment of the interest of one-third to his mother during her life, and the principal to his brothers and sisters. By his recognisance, he was to pay nothing to himself, for that was his own, at the date of the decree, the interest of which he was only bound to pay to his mother; and that interest he extinguished by conveying the land to her and his brother William, who then became bound to pay the interest of the one-half of the thirds to her. The sale, then, to Martha Updegrove, extinguished his recognisance, so far as she had any right to claim under it. And his conveyance to his brother William also extinguished his recognisance, so far as he had any thing to claim under it. To establish these propositions, he cited 11 Viner's Abr. A. 2, 442.

So, in this state, it has been decided, that a son, who accepts his father's land at a valuation in the Orphans' Court, takes it subject to the interest on one-third of such valuation, when there is a widow; and to the payment of the other children's shares of the principal, at her death. In respect to his own share, he has nothing to pay or to receive; being in his own hands, it is paid presently, by operation of law. Reigle v. Seiger, 2 Penna. Rep. 340; Stecker v. Shimer, 2 Watts & Serg. 399. This shows, that Thomas F. Updegrove had nothing in this recognisance coming to him, at the death of the widow of his father; nor was William B. Updegrove in a better situation.

But the defendants will contend, that there are words in the deeds of Thomas F. Updegrove to Martha Updegrove and William B. Updegrove, and of William to Richard, that amount, in point of law, to an exception or reservation of their respective shares in the one-third due at the death of the widow, that will prevent it from passing under their conveyances to their vendees.

The words in these deeds cannot be called reservations, nor operate as such: because a reservation is a clause of a deed, whereby the feoffor doth reserve some new thing to himself out of that which he granted before. An exception is part of the thing granted and of a thing 'in esse' at the time; but a reservation is of a thing newly created or reserved out of a thing demised, that was not 'in esse' before; so that this clause doth always reserve that which was not before, or abridge the tenure of that which was before. 30 Law Lib. 160, 161; 2 Hilliard's Abr. 359, No. 139.

*McClure,* contrà.

The question is, the effect of the reservation in the deeds amongst the brothers, who knew each one's share in the property, payable at the death of their mother. The deeds are indentures, and are the words of either party; and every word that is doubtful must be applied and expounded to be spoken by him to whom they will best refer, according to the *interest* of the parties. 1 Shep. Touchstone, 54. Webster defines *interest* to mean share; portion, part, participation in value. It was agreed, that the share of each heir would be, at the death of the widow, $94 91; a little less than the sum each one would get out of the valuation, the costs having been deducted. The sale was for $1900, and made by Thomas F. Updegrove, about a year after he had taken the property, and showed the sum reserved was a part of the consideration money. If Thomas F. Updegrove had a right to take the property, and sink his share of the valuation money in it, which cannot be questioned, had he not a right, when he sold to his mother and brother William, to reserve that portion or share which would have been coming to him, if he had never taken the property, on the death of his mother? The construction ought to be according to the intention of the parties, without too much regard to the proper definitions and significations of words. A manor may pass by the name of a messuage. 1 Shep. Touchst. 87; 3 Atkyns, 136. The construction ought to give effect to the words of the entire deed, so that all the parts might agree, that there be no discordance. 1 Shep. Touchst. 87. Why the reference to the docket of the Orphans' Court, unless to show the land had undergone a change, and their shares had a fixed money value? The following cases give constructions to reservations: Baker *v.* McDowell, 3 Watts & Serg. 358; Shœnberger *v.* Lyon, 7 Watts & Serg. 184; 10 Serg. & Rawle, 357; 5 Watts' Rep. 39.

Per Curiam. We affirm this judgment, for the reasons given by the judge who ruled the case below.

Judgment affirmed.