## Shelly *against* Shelly.

A. bought land from an heir who took it at the appraisement, subject to one-third to the widow, to be paid on the death of the widow. Under the 41st section of the act of 29th March, 1832, the heir may recover his portion of this after the widow's death, in *assumpsit* against A.

The suit, if against the heir taking the land at the appraisement, must be on the recognizance.

When an heir takes land at an appraisement, his own share of the price is merged in his fee.

*Qu.* How it would be if his wife were the heir?

But even if this were so in that case, yet his vendee may agree with him otherwise; and if such vendee give a bond for his wife's share, payable on the death of the widow, and sell the land to another subject to that bond, the obligee, or his administrator, if dead, may recover in *assumpsit* against such vendee.

ERROR to the Common Pleas of *Bucks* county.

This was an action on the case brought by Abraham Shelly, defendant in error, against Henry Shelly, plaintiff in error, to recover the sum of $176.73, with interest from the death of Ann Yeakle, the widow of David Yeakle, deceased, alleged to be due to the heirs of David Yeakle, deceased, out of the land in possession of the defendant. On the trial the court directed the jury to bring in their verdict for the plaintiff (without prejudice), and entertained a motion for a new trial, and gave the defendant a bill of exceptions. The death of the plaintiff was afterwards suggested, and Joel Shelly, his administrator, substituted.

The following case was stated for the opinion of the court:—

David Yeakle, late of Milford township, in the county of Bucks, died in 1820, intestate, lawfully seised in his demesne as of fee, of and in two tracts of land, situate partly in the county of Bucks and partly in the county of Lehigh, leaving a widow, Ann, and nine children, to wit: Jacob, George, Daniel, Ephraim, Salome who intermarried with Abraham Shelly, Maria, Susan intermarried with Charles Yeakle, Nancy and Rosanna. On the 29th August, 1820, Jacob Yeakle, the eldest son, presented a petition to the Orphans' Court of Bucks county, praying said court to award an inquest to make partition or valuation of the premises to and among the said parties, agreeably to law. Whereupon said inquest was awarded; and made return on the 27th November, 1820, after having found " that the same lands and tenements, with their appurtenances, could not be parted and divided to and among the widow and all the children of the said deceased, without prejudice to or spoiling the whole; but that the said lands and tenements as aforesaid would accommodate two of the children of the said deceased." Said inquisition was confirmed on the

VIII.—20

27th February, 1821, and the rule upon the heirs to show cause why they should not appear and accept or refuse returned duly served. Whereupon Jacob Yeakle, the eldest son of said deceased, appeared in open court and accepted No. 1 and 1; and Abraham Shelly, by virtue of the following power of attorney, to wit:

" Know all men by these presents, that whereas David Yeakle, of the township of Milford, in the county of Bucks, and state of Pennsylvania, died intestate, leaving real estate as lands and tenements, part of which in Bucks county and part of the same in Lehigh county, through which the county line runs; and whereas, upon petition, and by order of the Orphans' Court, inquisition has been held, partition and valuation made of the aforesaid real estate by a jury of twelve men, according to law; and whereupon Jacob Yeakle, the eldest son of the said deceased, is by law entitled to the preference before the rest of the heirs, of electing and taking one part of the said divided estate; and whereas I, George Yeakle, brother to the said Jacob, and second son of the said David Yeakle, deceased, am entitled by law to accept and take the second part of the said divided estate at the valuation thereof. Now know ye, that I, the said George Yeakle, have made, ordained, constituted and appointed, and by these presents do make, ordain, constitute and appoint Abraham Shelly, of the township and county aforesaid, practitioner of physic, my true and lawful attorney, irrevocable in my name, but for the sole use and benefit of him the said Abraham Shelly, practitioner of physic, his heirs and assigns, to ask, demand, recover and receive all my claim, right, title, liberty and benefit, respecting my preference of accepting, electing and taking of the aforesaid divided estate, which I am or may be entitled to, giving, and by these presents granting to my said attorney my full power and authority in my name, place and stead, for the recovery of all my claim, right, and all whatsoever legally might be granted to me respecting my preference and right in electing and taking of the said divided real estate, ratifying and confirming, and by these presents allowing whatsoever my said attorney shall, in my name, lawfully do or cause to be done in and about the premises, by virtue of these presents. In witness whereof I have hereunto set my hand and seal, the 9th October, 1820.

" GEORGE YEAKLE. [SEAL.]

" Sealed and delivered in the presence of

" SOLOMON HETRICK, }
" MICHAEL BRESCH. } Acknowledged and recorded, &c.

appeared in open court and accepted No. 2 and 2. Whereupon the court ordered and awarded the aforesaid premises, with the appurtenances, unto Jacob Yeakle and Abraham Shelly, (each the respective share of their election), their heirs and assigns for ever, to have and to hold said land and premises, with the appurtenances, in as full, free and ample manner as the intestate in his

lifetime held and enjoyed the same, (after entering into bonds with their sureties, and themselves into recognizances, to secure to the other children their respective shares).

Said estate was valued as follows, to wit:

| | | |
|---|---|---|
| Valuation of Jacob Yeagle's part, - - - - | $3082.05 |
| "  Abraham Shelly's "  - - - - | 1689.90 |
| Whole valuation, - - - - - - - - | $4771.95 |
| Each child's share, - - - - - - - | $530.21 |

One-third of this sum to be paid at widow's death, $176.73

Whereupon Jacob Yeakle gave the following Orphans' Court Bonds:

| | |
|---|---|
| To George Yeakle, - - - - - - - - - - | $530.21 |
| "  David  "  - - - - - - - - - - | 530.21 |
| "  Ephraim  "  - - - - - - - - - - | 530.21 |
| "  Maria  "  - - - - - - - - - - | 530.21 |
| "  Susan  "  - - - - - - - - - - | 430.99 |

And Abraham Shelly gave the following Orphans' Court bonds:

| | |
|---|---|
| Nancy, - - - - - - - - - - - - - | $530.21 |
| Rosanna, - - - - - - - - - - - - | 530.21 |
| Susan, - - - - - - - - - - - - - | 99.27 |

Abraham Shelly and one Christian Stauffer subsequently entered into the following article of agreement for the sale and purchase of that portion of said real estate taken by Abraham Shelly in right of George Yeakle, to wit:

"Articles of agreement made and concluded this 3d day of March, in the year of our Lord 1821, between Abraham Shelly, of Milford township, in the county of Bucks, and State of Pennsylvania, practitioner of physic, of the one part, and Christian Stauffer, of the same place, yeoman, of the other part, witnesseth that the said Abraham Shelly, for and in consideration hereinafter mentioned, hath granted, bargained, sold and confirmed, and by these presents doth grant, bargain, sell and confirm, unto the said Christian Stauffer, to his heirs and assigns, that certain tract or tracts of land being the part called No. 2 of the plantation of David Yeakle, late of Milford township, in the county of Bucks, deceased, which plantation by a jury of twelve men, upon an order of the Orphans' Court, has been divided into two parts according to law, and denominated part No. 1 and part No. 2, which said part No. 2, situate lying and being partly in the said Milford township, in the county of Bucks, and partly in the township of Upper Milford, in the county of Lehigh, containing 70 acres and 66 perches, has been granted by the Orphans' Court (February Term, in the year aforesaid), to the said Abraham Shelly, assignee of George Yeakle, the second son of the said David Yeakle, deceased, which said part, No. 2, except an acre of woodland of

timber of the said part, No. 2, to be excepted and preserved for
the said Abraham Shelly, his heirs and assigns, which said acre
of woodland to be along the line of the woodland No. 1, from end
to end of said line, or from Mathias Deterer's field through the
woods to Jacob Snyder's field, and in breadth as broad as will
suffice for an acre, which acre is hereby and will always be ex-
cepted and preserved for the said Abraham Shelly, his heirs and
assigns, and the remainder of the said part, No. 2, which will be
entirely 76 acres and 66 perches, with all and singular the im-
provements, ways, woods, water, water-courses, meadows, with
the rights, liberties, privileges, hereditaments and appurtenances
whatsoever thereunto belonging or in anywise appertaining, and
the reversions, issues, and profits, interest, use, possession, pro-
perty, claim and demand whatsoever of him the said Abraham
Shelly, of, in and to the hereby granted, or mentioned to be grant-
ed premises.   To have and to hold the said piece of land, heredi-
taments and premises hereby granted, or mentioned to be granted,
unto the said Christian Stauffer, his heirs and assigns, to the only
and proper use and behoof of the said Christian Stauffer, his heirs
and assigns for ever ; and the said Abraham Shelly doth hereby
promise for himself, his heirs, executors, administrators or assigns,
to sign, seal, execute and deliver to the said Christian Stauffer, or
to his heirs and assigns, a lawful deed for the said premises at any
convenient time, or when demanded after the space of twenty
days from the date hereof; and the said Christian Stauffer doth
hereby promise and agree for himself, his heirs, executors, admi-
nistrators or assigns, to be under and subject to the payment of
all and singular whatever the said Abraham Shelly is owing upon
the said premises, or part of land No. 2, containing 70 acres and
66 perches, unto the heirs of the said David Yeakle, including the
said Abraham Shelly's hereditary portion, and to fulfil and per-
form all and singular in whatever the said Abraham Shelly stands
at present bound to the heirs of the said David Yeakle, deceased,
for the said premises, or part of land No. 2, containing 70 acres
and 66 perches; and the said Christian Stauffer doth hereby pro-
mise and agree for himself, his heirs, executors, administrators and
assigns, to pay the further sum of £91, lawful money, to the said
Abraham Shelly, his heirs or assigns, and to execute and deliver a
bond of the said sum of £91, payable to the said Abraham Shelly,
and at the time of the delivery of the deed of the said part of land
No. 2 ; and the said Christian Stauffer doth hereby promise and
agree for himself, his heirs, executors, administrators and assigns,
that he shall and will, well and truly pay to the heirs of the said
David Yeakle, all and singular, whatever the said Abraham Shelly
stands bound to pay to the said heirs at the time which it is due,
or will become due, for the said premises or part of land No. 2,
and by reason or means of the non-performance of the said pay-
ments to the said heirs, shall and will at all times, well and suffi-

[Shelly v. Shelly.]

ciently save, defend, keep harmless and indemnified, the said Abraham Shelly and his sureties, for the said payments, and shall and will execute and deliver such a bond to the said Abraham Shelly and his sureties, at the time when he, the said Christian Stauffer, will receive the deed for the said premises; and for the true performance of all and every of the above said covenants and agreements, they, both parties, bind themselves firmly unto each other in the penal sum of £1000, lawful money, to be paid by the transgressor thereof unto the party that shall find themselves offended thereby.

·  "In witness and confirmation whereof, both the parties have, &c. hereunto set their hands and seals on the day and year above said.

"ABRAHAM SHELLY,     [SEAL.]
"CHRISTIAN STAUFFER,  [SEAL.]

"In presence of MORGAN CUSTARD,
   GEORGE BRESCH."

On the 19th March 1821, Abraham Shelly, and Salome his wife, by indenture, conveyed the said real estate in fee-simple to Christian Stauffer, giving a clear title upon the face of it. And thereupon Christian Stauffer executed and delivered the following instrument of writing:

"Know all men by these presents, that I, Christian Stauffer, of Milford township, in the county of Bucks, and State of Pennsylvania, yeoman, am held and firmly bound unto Abraham Shelly, physician, Christian Huber, Jacob Shelly, and Abraham Overholtzer, all of the township, county and State aforesaid, in the sum of £1260 8s. 6d. of good and lawful money of Pennsylvania, to be paid to the said Abraham Shelly, Christian Huber, Jacob Shelly, and Abraham Overholtzer, or their certain attorneys, executors, administrators or assigns, to which payment well and truly to be made, I bind myself, my heirs, executors and administrators, firmly by these presents. Sealed with my seal dated the 19th March 1821.

"The condition of this obligation is such, that whereas, on the 27th February 1821, one portion of the real estate of David Yeakle, late of Milford township, in the county of Bucks, deceased, was adjudged and confirmed unto the abovenamed Abraham Shelly, by the Orphans' Court at Doylestown, in the county of Bucks. And whereas, the said Abraham Shelly, with the above- · named Christian Huber, Jacob Shelly, and Abraham Overholtzer, as his sureties, stand bound to Nancy Yeakle, Rosanna Yeakle, and Susannah wife of Charles Yeakle, children and heirs of the said David Yeakle, deceased, to pay the said heirs and the widow of the said David Yeakle, the sum of £434 17s. 8d. lawful money in manner following, viz: to the said Nancy Yeakle and Rosanna Yeakle, each £132 11s. on the 27th day of February 1822, with

·[Shelly v. Shelly.]

one year's interest for the same; and the further sum of £66 5s. 6d. to each of the said two heirs, Nancy and Rosanna, after the death of the said widow; and to the said Susannah, wife of Charles Yeakle, the sum of £24 16s. 4½d. on the 27th February 1822, with one year's interest for the same; and the further sum of £12 8s. 2d. after the death of the' said widow. And to the said widow the sum of £12 13s. 6d. lawful money, on the 27th February 1822, and in future (the like sum) of every year on the 27th February, as long as she lives, as her yearly interest, which is to come to her. And whereas, the said Abraham Shelly hath conveyed and sold part of the aforesaid portion of the said real estate to the said Christian Stauffer. Now the condition of the above obligation is such, that if the said Christian Stauffer, his heirs, executors, administrators or assigns, do and shall well and truly pay, or cause to be paid, unto the aforesaid heirs and widow, their heirs, executors, administrators or assigns, or legal representatives, the aforesaid sum of £434 17s. 8d. in the same manner aforesaid, and in all respects fulfil the same concerning or respecting the aforesaid payments, as the said Abraham Shelly, with his sureties, stands bound to the said heirs and widow. And that if the said Christian Stauffer, his heirs, executors or administrators, do and shall well and truly pay, or cause to be paid to the said Abraham Shelly (who is one of the heirs of the said David Yeakle, deceased), his heirs, executors, administrators or assigns, the sum of £132 11s. lawful money, on the 27th February 1822, with one year's interest for the same, and the further sum of £66 5s. 6d. after the death of the said widow, all without defalcation; and that if the said Christian Stauffer, his heirs, executors, administrators or assigns, do and shall defend, keep safe, harmless, and indemnify the said Abraham Shelly, Christian Huber, Jacob Shelly, and Abraham Overholtzer, their heirs and assigns, in and about the aforesaid payments to the aforesaid heirs and widow, then the above obligation to be void, otherwise to be and remain in full force and virtue.

" CHRISTIAN STAUFFER, [SEAL.]

" Sealed and delivered in presence of ⎫
        " JACOB DIETZ,                  ⎬  Recorded, &c."
        " CHRISTIAN OITT.               ⎭

Subsequently on the 25th March 1824, Henry Stauffer and Ann his wife, and said Henry Stauffer, as attorney in fact of Jacob Stauffer and Mary his wife, and David Stauffer and Barbara his wife, by indenture under their respective hands and seals, and duly recorded, &c., conveyed all their right, title and interest in said property to Henry Shelly, in consideration of the sum of $1056.67, " subject to the payment of the sum of $33.80 to Ann Yeakle, the widow of David Yeakle (the elder), deceased, or her order on the 1st March in each and every year during her natural

life, as her lawful dower arising out of the hereby granted premises, and also subject to the payment of the sum of $563.33 at the decease of said Ann, to the heirs of the said David Yeakle, deceased, or their legal representatives, as the principal sum or fund of the aforesaid annual dower."

It is admitted that Ann, the widow of David Yeakle, deceased, died on the 13th February 1841, and that Salome, the wife of Abraham Shelly, died previously to the institution of this suit, and before the death of the widow (Ann Yeakle), leaving eight children, seven of whom are minors. All the deeds and records referred to are to be considered as part of this case.

It is agreed that no part of the payment due at the death of the widow has been made, either to Abraham Shelly in right of his wife or as assignee of George Yeakle. It is also agreed that it be considered that the plaintiff has filed a declaration upon his special case.

If the court shall be of opinion that the plaintiff is entitled to recover, either as assignee or on the part of his wife, then judgment for plaintiff, amount to be settled by the prothonotary; but if not, then judgment to be entered for defendant.

The above case to be considered in the nature of a special verdict, and subject to a writ of error.

The court below charged the jury as follows:

The case of *Pidcock* v. *Bye* determined that an action of *assumpsit* may be maintained against the assignee of land subject to the charge of a widow's thirds, to recover the principal of such charge by those entitled to it after her death, without an express promise to pay it on the part of the assignee, but the judgment to be entered so as to make the land only liable, and not the defendant personally. Abraham Shelly either has a right to claim the amount due on No. 2 and 2 in his own right, or as trustee for those who are entitled to the money. He having died since this case stated, and his administrator having been substituted, Joel Shelly will hold the money when it is recovered, as trustee; but we think the action can be maintained in his name. Henry Shelly took the land subject to the promise to pay to Abraham Shelly; and it is only carrying out the principle decided in *Pidcock* v. *Bye*. The defendant admits he has not paid, and is willing to pay to the proper person.

It is the general rule of the English courts of law to take notice only of legal rights, leaving the consideration of equitable interests to the courts of equity. But even then, if A by bond bind himself to pay money to B, for the use of C, B is the party to sue because the legal interest is in him, C having only an equitable right in the money. 2 *Inst.* 673; 7 *East* 148; 3 *Lev.* 139; *Brown on Actions at Law* 100; 45 *Law Lib.* 97. And the covenant or obligation need not be expressly either to the plaintiffs to enable them to sue. The charge is on the land in pursuance of

legislative enactment, and no form of action could be devised where the objection would not be equally strong.  If we had a Court of Chancery, the remedy would be there; as we have none, this court will extend the remedy at law to meet the justice of the case.  So far then as the lien is on No. 2 and 2 in right of Salome the wife of Abraham Shelly, the plaintiff is entitled to judgment *de terris.*  The amount to be ascertained by the attorneys.

Error assigned :

The court erred in decreeing judgment *de terris* in favour of the plaintiff.

*Michener*, for the plaintiff in error, referred to 8 *Serg. & Rawle* 167 ; 2 *Whart.* 425; 6 *Watts* 183.

*Fox*, contra, relied on *Pidcock* v. *Bye*, (3 *Rawle* 183).

The opinion of the Court was delivered by

Huston, J. — In the case of the estate of Gen. William Alexander, the clerk of the Orphans' Court made out some two hundred and fifty recognizances, for the several sums due to each of a great number of heirs presently, as well as for the sums which would be due thereafter.  On an appeal, the court did not allow his bill of fees.  The usual form of a recognizance to pay to the heirs the sums which should be due to each was said to be of long standing, and fully sufficient for the security of all and every one. In such case each could sue, though not named.  Our Act of Assembly would seem to settle this dispute.  See 41st section of the act of 29th March, 1832 : — " Should the widow of the decedent be living at the time of the partition, she shall not be entitled to the sum at which her purpart or share of the estate shall be valued, but the same, together with interest thereon, shall be and remain charged upon the premises, if the whole be taken by one child or other descendant of the deceased, or upon the respective shares, if divided as hereinbefore mentioned; and the legal interest thereof shall be annually and regularly paid by the persons to whom such real estate shall be adjudged, *their heirs or assigns holding the same*, according to their respective portions, to the said widow during her natural life, in lieu and full satisfaction of her dower at common law, and the same may be recovered by the widow, by distress or otherwise, as rents in this commonwealth are recoverable.  On the death of the widow the said principal sum shall be paid by the children or other descendants, to whom the same shall have been adjudged, their *heirs or assigns holding the same*, to the persons thereto legally entitled."

This last provision of the act puts entirely aside one of the objections to the plaintiff's recovery.  The Legislature first secured to the widow, by cumulative remedies, while she lived; and, aware that the person to whom the land had been awarded may

die or remove to a distance before the death of the widow, they provided expressly that the principal sum charged should be paid to those entitled *by the person holding the land,* whether he was heir or vendee of the person to whom the land had been allotted in the case by the Orphans' Court: and this evidently intended to save the heirs respectively their interest directly out of the land, without following him to whom it had been awarded, and who might be insolvent if found. If the person to whom it was awarded had been sued, no doubt the suit must have been on his recognizance. The law made the shares of the heirs a lien until their money became due, and then made the person owning the land liable to a suit and judgment *de terris.* We have decided that a recovery may be had by *assumpsit* stating the facts. On the facts the law would imply a promise to pay; but the act removes all doubt, and makes him who holds the land as terre-tenant liable.

Another objection was made, which, if the facts of this case had been like those in the cases cited, might have availed, viz., that when Abraham Shelly took the land at the valuation, his right to his wife's share of the valuation being due to him, was merged in the fee vested in him, as he could not be both debtor and creditor. I am not sure this was true as to the share of his wife, though it would generally be true if the share had descended to himself. I say generally true; but when Abraham Shelly sold, he and his vendee might agree otherwise: and they did agree otherwise. The articles of agreement are express, that Stauffer shall pay the sums due to the heirs of D. Yeakle, including the said Abraham Shelly's hereditary portion; but, to remove all doubt, he gave to Abraham Shelly, one of the heirs of D. Yeakle, a bond for £132 11s. one year after the land had been allotted to Shelly, and also £66 5s. 6d. on the death of the widow. Now, unless the contract is forbidden by a positive enactment, or by the general law, as being contrary to morality or general welfare, every contract is binding; and this was binding. When Stauffer sold to Henry Shelly, the first sum of £132 11s. had been paid, and the land was conveyed to H. Shelly, " subject to the payment of $33.80 to Ann Yeakle, widow of David Yeakle (the elder), deceased, or her order, on the first of March in every year during her life, as her lawful dower arising out of the hereby granted premises," and also " subject to the payment of $563.33, at the decease of the said Ann, to the heirs of the said David Yeakle, or their legal representatives, as the principal sum or fund of the aforesaid annual dower."

This suit is brought for the proportion of that sum which, by the case stated, belonged to Abraham Shelly or his wife. The wife is dead and the widow is dead. After the case was stated and argued, Abraham Shelly died, and his administrator, Joel Shelly, was substituted. The decision is right, both that the sum is recoverable in this suit, and that Joel could be substituted.

[Shelly v. Shelly.]

Whether he will hold in trust for himself and his brothers and sisters as heirs of his mother, or as heirs of his father, was mentioned, but not discussed, and, if there is any doubt, may be settled hereafter; but, if his father did not die insolvent, may be perfectly immaterial.

Judgment affirmed.