## Smith, Appellant, *v.* Danielson.

*Partition—Charge on land—Share of widow—Act of March 29, 1832, P. L. 190—Act of June 12, 1878, P. L. 205—Actions—Parties.*

1. A charge upon land in favor of the widow, created in partition proceedings under the Act of March 29, 1832, P. L. 190, is created by the express mandate of the law, and if a recognizance bond, or other security is required by order of the court, or voluntarily given by the party, it is merely an additional and collateral security, and does not extinguish the lien created by the statute; nor is any order of court necessary to establish the charge upon the land.

2. Where a person acquires a fee in six-sevenths of the land upon which a widow's portion is charged, he acquires the right to six-sevenths of the principal payable upon the death of the widow, and ordinarily the six-sevenths thus charged would be merged in the inheritance; but if such person on reselling the land takes a bond from his vendee to secure the payment of the principal of the entire dower fund when it becomes due, the law will presume that no merger was intended and no merger in fact took place. Any one taking title under the vendee is bound to take notice of the partition proceedings, any assignment of the dower fund, and the fact that there was no merger; and if the orphans' court in decreeing a sale of the land for the vendee's debts mistakenly directs that the principal shall be paid to the heirs of the widow after the latter's death, the purchaser at such sale and his successors in title are bound to take notice of the mistake, and to pay the fund to "the parties legally entitled to receive it," as provided by the act.

3. In such a case the parties legally entitled to the fund may after the death of the widow maintain an action of assumpsit against the owner of the land to recover the principal of the fund, but in such an

action judgment will be entered so as to limit the lien of the judgment, and any execution issued on the judgment, to the land against which the fund had been charged in the partition proceedings.

Argued April 19, 1910. Appeal, No. 32, April T., 1910, by plaintiff, from judgment of C. P. Westmoreland Co., Feb. T., 1907, No. 570, for defendant non obstante veredicto in case of Joseph Smith, administrator of the estate of Amanda Vance, deceased, v. Charles Danielson's Executors. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit to recover a charge on land. Before Mc-CONNELL, J.

The facts are stated in the opinion of the Superior Court.

At the trial the jury returned a verdict in favor of the plaintiff in the amount of $773.08, but the court subsequently entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*James S. Moorhead*, with him *M. N. McGeary, Rabe F. Marsh* and *Robt. W. Smith*, for appellant.—The Act of June 12, 1878, P. L. 205, was not intended to relieve the covenantor or grantee in a deed, as regards the land described in that deed, and which has been conveyed to him and subject to the charge or incumbrance: De Haven v. Bartholomew, 57 Pa. 126; York Borough v. Welsh, 117 Pa. 174; Kunselman v. Stine, 192 Pa. 462; Dull v. Slater, 31 Pa. Superior Ct. 488.

*Charles E. Whitten*, with him *H. Clay Beistel* and *Paul H. Gaither*, for appellee.—The action of assumpsit cannot be maintained: Easby v. Easby, 180 Pa. 429; Hollenberger v. Yaukey, 145 Pa. 179; Fisler v. Reach, 202 Pa. 74; Kunselman v. Stine, 192 Pa. 462.

OPINION BY PORTER, J., March 1, 1911:

David Forsythe died intestate and seized of a tract of land, containing thirteen acres and forty-five perches, in Westmoreland county. Alfred Vance acquired title from the heirs of the deceased to six-sevenths of this tract, subject to the right of dower of the widow of deceased. Proceedings in partition were had in the orphans' court of Westmoreland county, and the land was allotted to Alfred Vance at the valuation thereof by the inquest, in November, 1868. The estate of Rebecca Forsythe, the widow of the decedent, in this land, was in this proceeding determined to be the interest on $716.10, payable annually during her life, as her statutory dower, said sum to be charged upon the land; the principal of said amount to be paid, upon her death, to the parties entitled, and the court decreed that Vance enter into recognizance to pay said interest annually to the widow during her life and to pay the children of Sarah Armstrong, who as heirs of David Forsythe, deceased, were entitled to one-seventh of the amount, their shares of said amount at the death of said widow. The calculation filed in this proceeding showed that the amount to be secured to the Armstrong children, upon the death of the widow, was $102.30. Vance entered into a recognizance, which was approved by the court, conditioned that he "pay yearly to Rebecca Forsythe, the widow of David Forsythe, the interest on $716.10 . . . . and, at her death, pay or cause to be paid unto the said children of Sarah Armstrong or their legal representatives their respective shares of said sum." Rebecca Forsythe, the widow, subsequently became the wife of John Zundel, and Vance and those who afterwards acquired title under him paid to her yearly, during their respective periods of ownership, the sum of $42.96, the amount of her dower charge to which the land was subject. Alfred Vance and his wife on December 18, 1876, for the consideration of $2,500 conveyed this land to Louis Krepps under a deed which made no mention of the dower charge, but Krepps at the same time ex-

ecuted a bond in favor of Vance, in the penal sum of $1,432.20, with warrant of attorney to confess judgment, conditioned that he (Krepps) pay or cause to be paid "unto the said Alfred Vance the sum of $716.10 at the death of Rebecca Zundel, who was the widow of David Forsythe, deceased." Vance, on December 20, 1896, assigned, out of the amount secured by this bond, the sum of $613.80, to Amanda Vance, the plaintiff's intestate. It may here be noted that the part of this bond so assigned to Amanda Vance represented exactly six-sevenths of the entire principal of the dower fund, the interest upon which was to be paid to Rebecca Forsythe during her lifetime, and with the one-seventh which was to be paid to the Armstrong children constituted the entire fund which was to become payable upon the death of said widow. Louis Krepps died intestate on June 27, 1882, and this tract was sold by order of the orphans' court for the payment of his debts, the order of court under which the sale was made providing that the land should be sold "subject to the payment of the interest annually on $716.10 to Rachael Forsythe, during her lifetime, and at her death the principal sum to be paid to the heirs of said widow." The return to this order of sale, which was approved by the court, and the deed to Samuel S. Flack, the purchaser, dated March 7, 1883, disclose that the sale was made upon terms substantially following the language of the above quoted order. It is evident that two errors, clerical or otherwise, crept into this order, one calling the widow Rachael instead of Rebecca Forsythe, and the other providing that the principal sum upon which the dower interest of the widow was based, should at her death be payable to her heirs. Samuel S. Flack, on March 20, 1893, conveyed the same land to Daniel F. Williams, by deed which contained the following covenant, viz.: "subject to a dower charge of $42.96 to be paid annually to Rebecca Forsythe (now Zundel) widow of David Forsythe, deceased, during her natural lifetime by the said Daniel F. Williams, and at her death

the said Daniel F. Williams to pay the principal sum of said dower, namely $716.10 to the person or persons lawfully entitled thereto; but no right to said dower that may now be held by the grantors hereto by right of purchase is hereby conveyed, but said right remains the same as before the existence of this indenture." Daniel F. Williams, on April 17, 1893, conveyed the land to Charles Danielson, by deed which contained the following covenant, "said lands being subject to a yearly dower of $42.97 to be paid annually to the widow of David Forsythe, deceased, now Rebecca Zundel, during her natural lifetime, and at her death the principal sum of said dower, namely $716.10, to be paid by the party of the second part to the person or persons lawfully entitled to the same." Rebecca Forsythe, afterward Zundel, the widow of David Forsythe, died in June, 1904, and this action of assumpsit was brought by the administrator of Amanda Vance, deceased, to recover of Charles Danielson, who was then living and the owner of the land, the six-sevenths of the $716.10 principal sum of the dower fund which had been charged upon the land. The plaintiff averred that the land in the hands of the defendant was charged for the payment of the entire principal sum of dower fund, and that as to $613.80 of that fund, she was the party entitled under the law to receive it. Charles Danielson, the defendant, died during the pendency of this action, and his executors were substituted as parties defendant. There was a verdict in favor of the plaintiff for the amount claimed, with interest thereon, but the court subsequently entered judgment in favor of the defendant non obstante veredicto, from which judgment the plaintiff appeals.

The proceedings in partition of the estate of David Forsythe, deceased, were subject to the provisions of the Act of March 29, 1832, P. L. 190, and all of the land having been allotted to Alfred Vance he took it subject to the provisions of the forty-first section of that statute; that the sum of $716.10, at which the share of the widow

was valued, should remain charged upon the premises . . . . and the legal interest thereon should be annually and regularly paid by the person to whom such real estate shall be adjudged, their heirs or assigns holding the same, according to their respective portions, to the said widow, during her natural life, . . . . the same to be recovered by the widow by distress or otherwise as rents in this commonwealth are recoverable. The widow having died, the concluding sentence of this section of the statute is the one material for our consideration. "On the death of the widow, the said principal sum shall be paid by the children, or other lineal descendants to whom the said real estate shall have been adjudged, their heirs or assigns, holding the premises, to the persons thereunto legally entitled." The charge upon the land, which results in such a case, is by the express mandate of the law, and if a recognizance, bond or other security is required by order of the court, or voluntarily given by the party, it is merely an additional and collateral security, and does not extinguish the lien created by the statute: Medlar v. Aulenbach, 2 P. & W. 355; Good v. Good, 7 Watts, 195; nor is any order of court necessary to establish the charge upon the land: Kline v. Bowman, 19 Pa. 24. Vance, by reason of his former ownership of six-sevenths of the land, thus became entitled to a like proportion of the principal sum thus charged upon the land to become due after the death of the widow. Under this condition the presumption would generally be that his interest in the charge was merged in the inheritance, in the absence of evidence of a different intention and of circumstances which made it contrary to his interests that the charge should become extinguished. Had the land at that time been sold at sheriff's sale, as his property, his interest in the dower fund would have passed with the title to the land, and a like result would have ensued had he executed a voluntary conveyance without a special agreement to the contrary: Stecker v. Shimer, 5 Wharton, 452; Williams v. White, 35 Pa. 514. Merger is, however, largely

a question of intention, and where there is no intention, actual or presumed, of the person in whom a charge upon land and the title to the land are both vested, that there shall be a merger, equity will not hold the charge as extinguished: Carrow v. Headley, 155 Pa. 96. The allottee of land thus subject to a charge for dower may convey the land subject to the payment of the principal of the entire dower fund, when it becomes due, reserving to himself the right to receive his proportionate share of such fund, the intention so to do being indicated in a proper manner. He may make this reservation by suitable covenants in the deed by which he conveys the land, and a subsequent sheriff's sale of the land, as the property of the grantee or his successors in title, will not divest his share of such interest or charge: Kline v. Bowman, 19 Pa. 24; Updegrove v. Updegrove, 1 Pa. 136; Erb v. Huston, 18 Pa. 369. An orphans' court sale for the payment of the debts of the allottee, which is made expressly subject to the dower charge, stating the entire amount of the principal, the interest to be paid to the widow during her life and the principal sum, in numero, at her death, "to the heirs and legal representatives" of her deceased husband, has been held not to pass to the purchaser, with the land, the interest of the allottee in the dower fund charged thereon: Dech v. Gluck, 47 Pa. 403. The vital question in this case is whether the interest of Alfred Vance in the principal of this dower fund was merged in the title to the land which he by deed conveyed to Louis Krepps. That question is directly ruled by the case of Shelly v. Shelly, 8 W. & S. 153. The facts in that case were precisely similar to those with which we are here dealing. Lands had in partition proceedings been allotted to Abraham Shelly, charged with a dower fund, a portion of the principal of which he would have been entitled to receive on the death of the widow, had the land not been allotted to him; he afterwards conveyed the property to Stauffer, by deed giving a clear title in fee simple upon its face; and thereupon Stauffer executed

a bond, conditioned that, among other things, he pay to
Abraham Shelly the amount of his interest in this dower
principal after the death of the widow.    Stauffer some
years afterward conveyed the land to Henry Shelly "sub-
ject to the payment of the sum of $33.80 to Ann Yeakle,
the widow of David Yeakle, deceased, . . . . each and
every year during her natural life, . . . . and also sub-
ject to the payment of the sum of $563.33 at the decease
of the said Ann, to the heirs of the said David Yeakle, de-
ceased, or their legal representatives, as the principal
sum of fund of the aforesaid annual dower."   The widow
of David Yeakle died seventeen years later and Abraham
Shelly brought an action of assumpsit against Henry
Shelly, who was then the owner of the land, to recover
his share of the principal of the dower charge.   The Su-
preme Court held that the giving of the bond by Stauffer
to pay to his grantor his proportion of the dower prin-
cipal prevented a merger, that Abraham Shelly retained
his interest in this fund, that the land continued subject
to the charge, and that a recovery might be had in an
action of assumpsit, the judgment being entered de terris.
We are unable to discover any reason why that decision
does not distinctly rule the question whether Vance re-
tained his interest in the principal sum of the dower,
charged upon the land which he conveyed to Krepps.
Krepps took the land subject to the charge, and when the
widow died, Vance or his assigns became entitled to re-
ceive his share of the fund out of that land.

The assignment by Vance to plaintiff's intestate of his
interest in this bond operated as an absolute assignment
of his interest in the dower fund, and she became entitled
to payment of that share upon the death of the widow:
Grove's App., 103 Pa. 562.   Judgment was promptly
entered on this bond and it became notice to all who
dealt with Krepps or his estate.   This judgment was a
lien upon the land at the time Krepps died and until it
was sold by order of the orphans' court for payment of
his debts: Baxter v. Allen, 77 Pa. 468; Colenburg v.

Ventner, 173 Pa. 113.   This judgment indicated upon its face that it represented the principal sum charged upon the land to secure the dower interest of the widow of David Forsythe, deceased, which was of indeterminate value and intended to run with the land during the life of the widow; it was such a lien as would not ordinarily be divested by a judicial sale: Heist v. Baker, 49 Pa. 9; Tospon v. Sipe, 116 Pa. 588; Levengood's Est., 38 Pa. Superior Ct. 491.   The orphans' court, in decreeing the sale of the land for the payment of the debts of Krepps, recognized the character of this lien and ordered that the land be sold "subject to the payment of interest annually on $716.10 to Rachael Forsythe during her lifetime, and at her death the said principal sum to be paid to the heirs of said widow."   There was, it is true, a blunder in this order, in that the Christian name of the widow was not properly given, and in the specification that the principal sum was to be paid to "the heirs of said widow." But the important part was that this dower charge was identified to the amount of a cent.   This was sufficient to indicate the widow for whose protection the charge was created, and that it gave the purchaser at the sale, Samuel Flack, all the necessary information to find out who the widow was and where the charge originated is clearly demonstrated by the fact that he paid the charge annually to Rebecca Forsythe, and when he came to sell the property he referred to her as Rebecca Forsythe, the widow of David Forsythe.   It was the duty of the purchaser at the orphans' court sale to take notice of the action of partition which was directly in the line of the title and that showed that the interest on this dower charge was annually payable to Rebecca Forsythe and that the principal, at her death, was payable to the heirs of David Forsythe, or those legally entitled.   The purchaser was also bound to take notice of the record of the liens upon the land of Krepps, and the bond held by Vance upon which judgment had been entered, which was then a lien, plainly revealed the fact that the interest

of Vance in the principal of this dower fund had been retained by Vance and had not merged in the title which passed to Krepps. Flack had notice, therefore, that the land which he bought passed subject to the payment of the entire principal sum of the dower fund, upon the death of the widow, to plaintiff's intestate and to the Armstrong children, in proportion to their respective interests. The fact that the order of the orphans' court, directing the sale, referred to the principal of this dower fund as payable to the heirs of Rachael Forsythe did not matter. The dower was for the widow's third, and by the express mandate of the law the principal was, upon the death of the widow, to be paid to the children of her deceased husband, or "the parties legally entitled to receive it," and it was the duty of the purchaser to ascertain who were the parties entitled: Erb v. Huston, 18 Pa. 369; Bailey v. Com., 41 Pa. 473. It is not doing violence to this order of the orphans' court, to hold that the words, "to be paid to the heirs of said widow," are to be taken as meaning to be paid to those legally entitled to receive it. There can be no doubt that Samuel Flack had notice that he took the land subject to the payment of this entire charge and that, under the provisions of the order of the orphans' court, he retained in his own hands the sum of $716.10 as a part of the purchase money for the land to which he acquired title. All those who subsequently acquired title to this land had express notice, by the deeds directly in the line of the title that they took the land subject to the payment of the entire dower charge, the interest to be paid to the widow, and the principal to be paid to the heirs of David Forsythe and those who had lawfully succeeded to their title. When Flack conveyed to Williams he incorporated in his deed a covenant which obviated any necessity for the production of evidence that subsequent purchasers had any other or further notice that they took title to the land charged for the payment of the entire amount of the dower fund, both interest and principal. That covenant has been above

quoted in full, and by it this charge is clearly identified. That covenant required the grantee to pay the entire principal of this fund, and expressly provided that in case Flack by his purchase had acquired any interest in the principal sum of this fund such interest should not pass to his grantee, but should remain in him, Samuel S. Flack.

Plaintiff's intestate was entitled to receive, upon the death of the widow, six-sevenths of the principal of this dower, and the lands in the hands of Charles Danielson were charged for the payment of the same. The statute which made this fund payable to the heirs of the decedent, or those who had acquired their interest, did not provide a remedy for the recovery thereof from an alienee of the allottee. The question which originally arose was, how could this right against the property of one who was not personally liable, for the payment of the claim, be enforced. It was conceded that no action at law could be maintained in any country where there was a court of chancery. The Supreme Court solved the problem by permitting a recovery by the claimant in an action of assumpsit against the holder of the land, the judgment to be entered de terris: Pidcock v. Bye, 3 Rawle, 183. This decision has been followed in numerous cases, among which are Shelly v. Shelly, 8 W. & S. 153; Dech v. Gluck, 47 Pa. 403, and DeHaven v. Bartholomew, 57 Pa. 126. This involved no imposition of a personal liability upon the owner of the land at the time the incumbrance became payable.

The learned judge of the court below was of opinion that the plaintiff could not maintain this action because of the provisions of the Act of June 12, 1878, P. L. 205, entitled "An act to define the liability of grantees of real estate for the incumbrances thereon." The first section of that act provides that a grantee of land subject to ground rent, mortgage or other incumbrance, shall not be personally liable for the payment of such ground rent, mortgage or other incumbrance, unless he shall, by an

agreement in writing have expressly assumed a personal responsibility, or there shall be express words in the deed of conveyance stating that the grant is made on the condition of the grantee assuming personal liability. The second section of the act provides that the right to enforce such personal liability, that is in case the grantee has become personally bound to the grantor by an agreement in writing or the covenants of his deed, shall not inure to any person other than the person with whom such an agreement is made. It must be accepted as settled that an incumbrancer who is a stranger to the deed cannot maintain against a grantee an action to enforce a personal liability for the payment of an incumbrance upon the land, by basing his cause of action upon a covenant in a deed to which he is not a party. The mortgagee or other incumbrancer cannot, in his own name, maintain an action against the grantee, nor can he maintain an action in the name of the grantor to his use, to enforce such personal liability without the consent of the grantor: Fisler v. Reach, 202 Pa. 74; May's Est., 218 Pa. 64. But in the cases above cited, in which the judgment was entered de terris, no personal liability was imposed upon the holder of the land. Such a judgment cannot be enforced against any property of the defendant in the action except the land which was charged for the lien. The act of 1878 was intended to relieve the grantee of land from personal liability for the incumbrances thereon; it was not intended to relieve the land from any lien thereon, nor to take away from the holder of the lien any right which he then possessed to enforce it against the land. Judgment may be entered against a defendant in an action of assumpsit, without imposing upon him a personal liability, by strictly limiting in the judgment the property upon which it or any revival thereof, or any execution issued thereon, shall be a lien: Neale v. Dempster, 184 Pa. 482. The executors of the will of Charles Danielson were properly made parties to this action after he had died, whether other parties should have been added it is

not necessary to determine, as no plea in abatement was filed: Mathews v. Stephenson, 6 Pa. 496. The statement filed by plaintiff properly referred to the deeds describing the land upon which this charge is a lien, and there can be no difficulty in entering a judgment which will safeguard all the interests of the defendant and secure him the protection afforded by the act of 1878. We are of opinion that judgment should be so entered.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment in favor of the plaintiff, limiting the lien of such judgment and any execution issued thereon to the land upon which the claim of the appellant is a lien, with proper description thereof.