## Jardella Estate

*Boyd L. Spahr, Jr.,* for accountant.

*Robert L. Trescher* and *Frank Rogers Donahue,* for claimants.

*Robert N. C. Nix, Jr.,* for Commonwealth.

SHOYER, J., October 20, 1958.—Abner Jardella, also known as A. Greer Jardella, died September 30, 1955, a resident of Arizona, where letters testamentary were granted. Ancillary letters were granted in this jurisdiction on March 22, 1957. . . .

The claim of Andrew Bustard for $1,500 with interest from April 5, 1932, was denied. On behalf of claimant it was shown that he was a plumber who had done much work for decedent, a real estate agent, prior to 1929; that in the early part of that year decedent, who was the actual owner of premises 1932 Webster Street, Philadelphia, (title being in a straw party, Clara Robinson), asked claimant for a loan of $1,500 in order that decedent might comply with the demands of the then owner of the bond and mortgage that he pay off the same. Upon decedent's assurance that he would be personally responsible for repayment of the loan, claimant delivered his check in the requested amount payable to decedent. Thereafter, decedent arranged for assignment of the bond and mortgage by the then holder to claimant, although decedent himself retained possession of the recorded assignment. On many occasions decedent paid the interest up to April of 1932, but thereafter he paid no interest nor any of the principal, although he had acknowledged his indebtedness for both within the last six years. The source of this

proof was one Lucy G. McFarland, who had been decedent's secretary for many years, knew claimant and knew the details of the transaction forming the basis of his claim.

Decedent at the time of his death held an unrecorded deed from Clara Robinson to himself bearing date of April 10, 1933. Premises 1932 Webster Street along with some 12 other properties on Webster Street were included in the inventory. Counsel for the accountant contended that Bustard's claim was in effect an attempt by the mortgagee to hold a subsequent grantee personally liable for the mortgage under and subject to which he had taken title to the property and cited the Act of June 12, 1878, P. L. 205, sec. 1, 21 PS §655, as precluding the proof of Bustard's claim by oral testimony.

This act reads as follows: "A grantee of real estate which is subject to ground rent or bound by mortgage or other encumbrance, shall not be personally liable for the payment of such ground rent, mortgage or other encumbrance, unless he shall, *by agreement in writing*, have expressly assumed a personal liability therefor, or there shall be express words in the deed of conveyance stating that the grant is made on condition of the grantee assuming such personal liability: Provided, That the use of the words 'under and subject to the payment of such ground rent, mortgage or other encumbrance,' shall not alone be so construed as to make such grantee personally liable as aforesaid." (Italics supplied.)

The purpose or reason of the above legislation is not obscure. It was enacted in an era when amortization of first mortgage principal was the exception rather than the rule, and when it was not uncommon for the same piece of real property to pass through two or more successive purchasers for value without any disturbance of the original mortgage financing. Funds

for home financing were not then so available as they are today. Thus arose the saying that a mortgage on the home was desirable, if for no other reason than that it made the residence more readily salable. The statute was to protect unwitting purchasers of mortgaged property from being held to obligations which they did not intend to assume. See Fidelity-Philadelphia Trust Co. v. Hale & Kilburn Corporation, 24 F. Supp. 3; Smith v. Danielson, 45 Pa. Superior Ct. 125, 135-6. It was determined by the legislature that, in the absence of an express written agreement, a succeeding purchaser should stand to lose no more than his equity in the real estate at the time he bought it. Should the mortgagee thereafter fail to obtain satisfaction upon foreclosure, his additional remedy would be confined to a personal action against the original mortgagor on the latter's bond, in the absence of a specific written undertaking of liability by the subsequent purchaser.

Clearly this act can have no application to the facts in the present case. Here decedent was not "a grantee of real estate which is subject to mortgage" but he was on the contrary, the real owner from the time title was first placed in the name of Clara Robinson. While decedent's written title dates only from April 10, 1933, he had personally arranged for refinancing this real estate through Mr. Bustard in 1929 when decedent was in fact the real owner, but long before he became the paper grantee of Clara Robinson.

Except for the delay by Bustard in obtaining satisfaction since 1932, the factual situation here presented is not unusual. Although the claim is based on the oral testimony of decedent's secretary, the accountant makes no attempt to impeach her credibility either as to the original details of the transaction or the nonpayment of interest and principal since 1932. To sustain accountant's reliance on the Act of 1878 would be

to convert a statutory shield into a weapon. This certainly was not within the contemplation of the legislature. Bustard's claim will be allowed in full. . . .

And now, October 20, 1958, the account is confirmed nisi.